[File No. 6925]

## H. L. VERRY, Appellant, v. HERBERT J. YULY and ETHEL M. YULY, Respondents.

(15 NW(2d) 210)

Opinion filed July 28, 1944

*Paul Campbell,* for appellant.

*J. J. Coyle* and *O. B. Herigstad,* for respondents.

NUESSLE, J. This action was brought to foreclose a real estate mortgage executed by the defendants Herbert J. Yuly and Ethel M. Yuly, his wife. The defense is payment of the mortgage debt. The case was tried to the court. Judgment was ordered and entered for the de-

fendants, whereupon the plaintiff perfected the instant appeal, demanding a trial de novo.

The record fairly discloses the following pertinent matters: In 1935, the defendant Herbert J. Yuly owned a residence property in the city of Minot. He was in financial distress. Money was hard to find. C. R. Verry, the husband of the plaintiff, operated an insurance agency in Minot, and in connection therewith he looked after rentals of property and, when he could, acted as agent in procuring real estate loans. So Yuly inquired of Verry as to whether he might procure a loan through him. Verry said he had a client, Mrs. Connors, a one-time neighbor of his, who had saved a little money and who sometimes made loans and that he would take Yuly to see her—possibly she might make him a loan on his property. He did so. She agreed to and did loan Yuly $500, secured by the mortgage which it sought to be foreclosed in this action.

The note evidencing this loan and secured by the mortgage was made payable October 1, 1935, and bore interest at the rate of 8 per cent per annum. Yuly did not pay it when it fell due, nor did he pay the interest, and this default continued until September, 1937. In the meantime the property was occupied by a tenant at a monthly rental of $25. Mrs. Connors wanted her money, so finally Yuly arranged with Verry to look after the property and make collections of rent, some of which was in arrears, and pay the net amount collected to her. Pursuant to this arrangement Verry did collect the rent, including that in arrears. The mortgage stipulated that Yuly should keep the property insured, loss payable to the mortgagee. Verry procured insurance, and when repairs upon the property were necessary had them made. For his services he charged a commission of 5 per cent on the rentals collected. He deducted this charge as well as the charge for repairs and insurance from the rent and paid the remainder to Mrs. Connors to be applied, first in payment of interest, and then in reduction of the principal. He kept a record of the collections and payments and rendered a written statement to Yuly showing collections, his charges, and the payments for repairs, for insurance, and to Mrs. Connors. Yuly made no objection thereto. Thus the arrangement continued until September, 1939. The last payment made to Mrs. Connors was on September 11,

1939, in the amount of $25. She then had been paid $416.09 by Verry out of the collections made by him. Thereafter there was a change of tenants and no other payments were made. On September 11, 1939, there remained due on the note after crediting the payments made on the principal and interest, a balance of $235.45. Time went on. No further payments were made. Mrs. Connors became impatient. Verry was concerned because he felt he had been responsible for the making of the loan. Both Mrs. Connors and Verry wrote Yuly and, when they were able to do so, saw him personally, but could not get him to make any payments. Finally, in the fall of 1941, Yuly asked Mrs. Connors to go with him to the office of Mr. Coyle, his attorney, and see if they could not adjust the matter. So she went to Coyle's office. Yuly came a little later. As to what took place at this meeting the evidence is conflicting. Verry had calculated the amount remaining unpaid on the note and she took the statement showing this amount, together with the note and such other memoranda as she had with her. According to this statement there remained a balance due of $278.38, principal and interest. Mrs. Connors says she exhibited these papers to Coyle; that he examined the statement, the note with the endorsements thereon, and such other papers as she had; did some figuring himself and then told her Verry had made a mistake, that the amount remaining unpaid was only $240. But both Coyle and Yuly say she claimed the balance remaining unpaid was $160, while they said it was only $140. She denies this. In any event, there was some talk among them about the matter. Coyle and Yuly testified that Yuly said if Mrs. Connors would accept $150 without interest and pay Verry any charges he might have incurred for insurance, Yuly would give her an order on his tenant, directing the tenant to pay the monthly rentals to her as they fell due until this amount was paid. She denies this. She says she did say, after Coyle told her there remained only $240 due her and that Verry had made a mistake in his computation, she would accept $225 in full satisfaction of what was owing to her. Coyle further testified that it was agreed he should draw a writing, setting forth the settlement for the parties to sign, and that Mrs. Connors left the office with the understanding it would be drawn and she would return and sign it. But she never did. Mrs. Connors denies this. She further

says she later demanded the rent from the tenant, but he refused to pay her. She told Yuly this, so, on November 7, 1941, he collected the month's rent himself and turned it over to her. She gave him a receipt for it. He then gave her a written assignment of the rents. In any event, she continued thereafter to collect the rentals until July, 1942, when the tenant, on direction of Yuly, refused to pay her any further. The rent was payable in advance and the record is uncertain as to whether she collected for July. Se says she did not. Yuly says she did. If she be charged with this collection the whole amount she received on and after November 7 was $222.50.

Thereafter, both Mrs. Connors and Verry continued their attempts to make further collections, but Yuly would not pay. It is undisputed that Verry insured the property for the years 1940, 1941 and 1942, and that the premiums for this insurance remain unpaid, though Mrs. Connors said she would pay the premiums if Yuly did not. Verry charged them against Yuly and frequently billed him for the amount thereof, but Yuly, though he made no objection to the writing of the policies, did not pay. Finally, in September 1942, Verry wrote Yuly saying he could not have a client of his bothered any longer over the matter and that he was paying her the balance due on her loan and taking an assignment of the mortgage. He did pay Mrs. Connors— the amount is not disclosed—and took an assignment to his wife H. L. Verry, the plaintiff, who, he says, advanced the money. He also assigned to H. L. Verry the account he claimed to have against Yuly for insurance premiums. The plaintiff seeks in this action to foreclose the mortgage to satisfy the mortgage indebtedness, together with the account thus assigned to her.

The case was tried to the court without a jury. Plaintiff demanded a trial de novo in this court. The issue is purely one of fact. In such case the findings of the trial court, who sees and hears the witnesses as they testify, are entitled to appreciable weight by this court in considering the record as it comes to us for trial de novo. State v. Williston, 72 ND 486, 8 NW(2d) 564; Sinerius v. Anderson, ante, 269, 14 NW (2d) 230, and cases cited therein. But we are not bound by the findings of the trial court and if they are not well sustained by the evidence we are in duty bound to reverse or modify the judgment as the

record may warrant. For this reason we have set out at some length the substance of the record as it comes here now.

After careful consideration of the record we feel that though the testimony is, in many respects, unclear and contradictory, the circumstances are such as to warrant us in holding that there was no compromise settlement on November 7, 1939 as the defendant contends. Mrs. Connors was an elderly unlettered woman. She had difficulty in figuring interest. She had Verry do this for her. She retained the note in her possession and as payments were made endorsed them on the back of the note. When she collected rentals from Yuly's tenant after November 7, 1941, she kept copies of the receipts she gave for such collections. Verry kept books. He entered in those books the collections made of rentals on the Yuly property and the disbursements he made of the money thus collected. There is no challenge to the correctness of this account. Yuly kept no books. He testifies he had some receipts from Mrs. Connors for payments made which he gave to Coyle at the time of the conference in Cole's office, but his testimony is evasive, vague, and uncertain. Coyle testified from memory only as to what took place there. He says he drew a writing showing the agreement made between Yuly and Mrs. Connors, but that she never came to sign it so, after some months, he concluded the matter must have been settled and threw all the papers, including the receipts Yuly had left, and the draft of the agreement he had prepared, into the wastepaper basket.

Clearly there remained owing to Mrs. Connors on the mortgage debt on September 11, 1939, $235.45. Interest on this amount to November 7, 1941, was $40.60, making a total of $276.05. We cannot believe that Mrs. Connors agreed to settle this account for $150 without interest and, in addition thereto, pay Verry for the insurance he had written on the property. Respecting the subsequent payments made to Mrs. Connors on and after November 7, 1941, the only real dispute is as to whether she received the rent for the month of July, 1942. She says she did not. Yuly says she did. Giving the benefit of the doubt to Yuly, and it is a faint doubt only, she received in all, including the July rent, $222.50. Accordingly, we find that there remained unpaid on the mortgage debt at the time this action was brought, $53.55, with interest on that amount from July 1, 1942 at the rate of

8% per annum, and hold that the plaintiff is entitled to recover that amount and to a foreclosure of the mortgage and a sale of the mortgaged property to satisfy the same, together with her costs and disbursements.

The trial court held, and we think rightly, that the plaintiff is not entitled to recover in this action on the account for insurance premiums. The amount owing on this account was an obligation incurred for and on behalf of Yuly. It was not paid by Mrs. Connors prior to the assignment of the mortgage. When Verry wrote these policies he charged the premiums to Yuly. He at all times demanded payment from Yuly. He did not ask Mrs. Connors to pay. So far as the record shows nothing was said to her respecting the same at the time the assignment of the mortgage was taken. Accordingly, Verry, or his assignee, can have no recourse to the mortgage security but must look to Yuly for payment.

The judgment appealed from is accordingly reversed and the case is remanded to the district court for disposition consistent with this opinion.

MORRIS, Ch. J., and BURKE, CHRISTIANSON and BURR, JJ., concur.